UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

IN RE COMMODITY EXCHANGE, INC.             11 Md. 02213 (RPP)
SILVER FUTURES AND
OPTIONS TRADING LITIGATION                     **OPINION AND ORDER**

------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

**I.    BACKGROUND[1]**

Plaintiffs in this action are a proposed class of individuals who transacted in COMEX silver futures and options contracts on June 26, 2007 and also between March 17, 2008 and October 27, 2010 (the "Class Period"). On September 12, 2011, Plaintiffs filed a consolidated class action complaint (the "First Complaint") against J.P. Morgan Chase & Co., J.P. Morgan Clearing Corp., J.P. Morgan Securities Inc., and J.P. Morgan Futures Inc. (together, "JPMorgan"), as well as twenty unnamed "John Doe" Defendants (collectively, "Defendants"). (Compl. ¶¶ 1-2, 22-29, 199-210, ECF No. 85.) Plaintiffs' First Complaint alleged that Defendants had violated Sections 9(a) and 22(a) of the Commodity Exchange Act, 7 U.S.C. §§ 13(a), 25(a), and Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1. (Id.)

On December 21, 2012, this Court issued an Opinion and Order (the "Opinion") dismissing Plaintiffs' First Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Op. at 40, Dec. 21, 2012, ECF No. 127.) In so doing, the Court ruled that Plaintiffs had failed under the pleading standard set forth by Rule 8(a) to allege adequately scienter, the existence of artificial prices, or causation as required by the Commodity Exchange Act. (Op. at 23-34.) The Court further ruled that Plaintiffs had failed to state factual

---

[1] Because the factual and procedural history of this case was discussed at length in the Court's Opinion dated December 21, 2012, (see Op. at 1-15), the Court recounts the history of this case only as is necessary to dispose of the pending Motion for Leave to File an Amended Consolidated Class Action Complaint.

1

allegations adequate to allege the existence of a conspiracy to manipulate market prices as required by the Sherman Antitrust Act. (Op. at 35-38.) Finally, because Plaintiffs had stated at oral argument and in a letter to the Court that they had "alleged all [they] realistically could," (see Op. at 39), the Court gave Plaintiffs thirty days from the date of the Opinion's publication to show "good cause" as to why leave to amend was necessary, (Op. at 40).

## II. MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

On January 22, 2013, Plaintiffs filed a Motion for Leave to File an Amended Consolidated Class Action Complaint (the "Motion"). (Pls.' Mot. for Leave to File Am. Consol. Compl., ECF No. 129; see also Pls.' Mot. for Leave to File Corrected Am. Consol. Compl., ECF No. 131; Mem. in Supp. of Pls. Mot. for Leave to File Corrected Am. Consol. Compl. ("Pls. Mem."), ECF No. 132.) Attached to this Motion was a proposed amended consolidated class action complaint (the "Proposed Amended Complaint"). Plaintiffs argued that they should be permitted to file this Proposed Amended Complaint because (1) "the law favors permitting leave to amend;" (2) they had added specific, "multiple additional details and facts" that addressed the gaps identified by the Court in its Opinion; and (3) they believed grounds existed to add a new claim alleging a Sherman Act Section 2 monopolization claim against the Defendants. (Pls. Mem. at 1.)

On February 8, 2013, Defendants filed a memorandum in opposition arguing that Plaintiffs' Motion should be denied because the Proposed Amended Complaint still failed to adequately allege a violation of the Commodity Exchange Act or Sherman Antitrust Act. (Defs.' Mem. in Opp'n to Mot. for Leave to File Am. Consol. Compl. ("Opp'n Mem."), ECF No. 139; see also Decl. of Amanda F. Davidoff in Supp. of Defs.' Opp'n Mem. ("Davidoff Decl."), Feb. 8, 2013, ECF No. 140.) Defendants further argued that the Proposed Amended Complaint was futile and "dilatory," and that granting Plaintiffs' Motion would "both cause JPMorgan undue

prejudice and waste judicial resources." (Opp'n Mem. at 7.) Plaintiffs filed a memorandum in reply on February 19, 2013. (Reply Mem. in Supp. of Pls.' Mot. for Leave to File Am. Consol. Compl. ("Reply Mem."), ECF No. 144.)

### III.  APPLICABLE LEGAL STANDARD

"The grant or denial of an opportunity to amend [a complaint] is within the discretion of the district court." Foman v. Davis, 371 U.S. 178, 182 (1962). Pursuant to Rule 15 of the Federal Rules of Civil Procedure, however, a court must "freely grant leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Justice does not require granting leave to amend when a proposed amendment would be futile, made in bad faith, result in undue delay, or cause prejudice to the opposing party. Holmes v. Grubman, 568 F.3d 329, 334 (2d Cir. 2009); see also Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008) ("[M]otions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party."). Finally, when a "moving party has had an opportunity to assert [an] amendment earlier, but has waited until after judgment before requesting leave" to add a new claim, a court may "exercise its discretion [in considering leave to amend] more exactingly." State Trading Corp. of India v. Assuranceforeningen Skuld, 921 F.2d 409, 418 (2d Cir. 1990).

### IV.  ANALYSIS

**A. Plaintiffs have failed to show good cause as to why they should be granted leave to file the Proposed Amended Complaint since the proposed allegations are insufficient to establish a claim under the Commodity Exchange Act.**

1.   <u>JPMorgan's Alleged Concentrated Large Short Positions</u>

Plaintiffs first argue that they should be granted leave to file their Proposed Amended Complaint because it contains facts sufficient to show that JPMorgan "uneconomically and intentionally caused COMEX prices to be artificially low." (Pls. Mem. 2-4.) Specifically,

3

Plaintiffs state that they have added "new allegations relating to JPMorgan's concentrated short position and its effect on COMEX silver futures prices, as well as the fact that COMEX prices accomplished 92%-100% of the price discovery and led London silver prices and [the] world's silver prices throughout the Class Period." (Pls. Mem. at 2-3 (citing Am. Compl. ¶ 137(a)-(z)).) To support this claim, Plaintiffs plead numerous statistics that speak to "the existence of a large concentration" of short positions in the COMEX silver futures market. (Am. Compl. ¶ 137(i).) Plaintiffs claim that these statistics, along with information contained in the 2008 Commodity Futures Trading Commission (CFTC) Report titled "Large Short Trader Activity in the Silver Futures Market," show that JPMorgan "intentionally maintain[ed] a high short concentration in COMEX silver futures" in order to depress COMEX silver prices. (Pls. Mem. at 3 (citing Am. Compl. ¶ 137(i)-(r)); see also Am. Compl. ¶ 137(t)-(u).)

Critically, none of these new allegations, (see Pls. Mem. at 2-4), cure the deficiencies that the Court's Opinion identified in Plaintiffs' First Complaint, (see Op. at 20). Rather these statistics speak to whether it is plausible that JPMorgan had the ability to influence prices in the COMEX silver futures market—a factual allegation which JPMorgan has not disputed. (See Op. at 19.) As this Court noted in its Opinion, "[m]ere knowledge that certain actions might have an impact on the futures market is not sufficient to state a private claim under the Commodity Exchange Act." (Op. at 20 (quoting In re Rough Rice Commodity Litig., 2012 WL 473091, at *7 (N.D. Ill. Feb. 9, 2012)).) Here, none of Plaintiffs' new allegations set forth facts showing plausibly that JPMorgan specifically took, or failed to take, an action intended to cause artificial prices to exist in the COMEX silver futures market. Cf. CFTC v. Parnon Energy, Inc., 875 F. Supp. 2d 233, 249 (S.D.N.Y. 2012) ("To meet the specific intent element of a claim for manipulation . . . of a futures contract, [a plaintiff] must plead that Defendants acted (or failed to act) with the purpose or conscious object of causing or effecting a price or price trend in the

4

market that did not reflect the legitimate forces of supply and demand.") (internal quotation marks omitted).

### 2. The "Small" COMEX Silver Futures Market

Plaintiffs next argue that they should be granted leave to file their Proposed Amended Complaint because it contains facts sufficient to show that JPMorgan "well knew" the impact that its "large concentrated positions had on COMEX silver futures prices" and that JPMorgan therefore "intentionally concentrated its large short position in the small COMEX silver futures market, rather than in the large London Market, precisely to cause such depressant and suppressant effect on COMEX silver futures contract prices." (Pls. Mem. at 5 (citing Am. Compl. ¶ 137(a)-(b), (d)-(g), (u), (w)) (emphasis added); see also id. at 2-6.) But, as just discussed, alleging that Defendants merely had knowledge that certain actions might have an impact on the COMEX silver futures market is insufficient to show that Defendants acted with the intent to cause, or did in fact cause, artificial prices to exist in the marketplace. (See supra IV.A.1); see also In re Amaranth Natural Gas Commodities Litig., 587 F. Supp. 2d 513, 539 (S.D.N.Y. 2008) ("[E]ntering into a legitimate transaction knowing that it will distort the market is not manipulation."); cf. Parnon Energy, 875 F. Supp. 2d at 249-50 (inferring intent to manipulate where complaint alleged that defendants had "awareness of the tight [crude oil] market" and engaged in contemporaneous communications discussing plans to execute a market manipulation strategy).

Moreover, Plaintiffs fail to plead any facts sufficient to show why JPMorgan, even if it did know about the alleged impact of its allegedly held large short positions, should have traded silver futures contracts somewhere other than on the COMEX silver futures market. (Cf. Am. Compl. ¶ 137(a)-(f), (u)-(x).) Indeed, the claim by Plaintiffs that JPMorgan should have traded silver futures contracts on the ambiguously described "London Market," (id.), is spurious at best.

This is because the London Bullion Market—the "London Market" to which Plaintiffs seem to be referring—facilitates the trading of <u>physical</u> silver bullion and is "[u]nlike a futures exchange," (Davidoff Decl. Ex. D ("Website of the London Bullion Market Association").)[2] It is therefore of no moment that JPMorgan could allegedly "have made larger transactions with minimal price impact" by selling silver on the London (Bullion) Market, (Am. Compl. ¶ 137(x)), or that a "hedger" might typically seek to "transact in the London (Bullion) Market for large transaction[s] rather than in the COMEX market" so as "to avoid the transaction cost of selling at a lower price." (Pls. Mem. at 3 (citing Am. Compl. ¶ 137(w)).) Thus, contrary to Plaintiffs' argument, (Pls. Mem. at 5), the new allegations about trading in the London [(Bullion)] Market, taken together with other allegations in the Proposed Amended Complaint, still fail to allege specific conduct affecting silver futures and options contracts that might be plausibly attributed to JPMorgan's intent to make uneconomic trades or to manipulate silver futures prices in the COMEX market. See <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007) (dismissing claim where plaintiffs failed to "nudge[] their claims across the line from conceivable to plausible").

      3.     <u>Federal Reserve Report</u>

Plaintiffs also argue that their new allegation about how "JPMorgan has been criticized by the Federal Reserve for saying that it was hedging when it was not hedging," (Am. Compl. ¶ 137(u)), "plausibly" shows that JPMorgan "intentionally suppressed prices" on the silver futures market. (Pls. Mem. at 6.) Plaintiffs fail, however, to plead facts sufficient to connect the referenced Federal Reserve Report, entitled "Report of JPMorgan Chase & Co. Management Task Force Regarding 2012 CIO Losses," to this action. Cf. <u>Rpt. of JPMorgan Chase & Co.</u>

---

[2] While another market in London—the "London Metal Exchange"—does trade in futures and options contracts, it does not deal in <u>silver</u> futures or options contracts. (See Davidoff Decl. Ex. E ("Website of the London Metal Exchange").)

Mgmt. Task Force re 2012 CIO Losses (Jan. 16, 2013).³ First, the report has nothing to do with trading on the silver futures market. Instead, it addresses "the review of the JP Morgan Chase & Co. Management Task Force regarding the losses incurred in 2012 by the Firm's Chief Investment Office," (id. at 1), an entity that is not implicated in the present action. Second, the report involves events that took place in 2012, at least two years after the Class Period ended. (Id.) Accordingly, Plaintiffs' Proposed Amended Complaint is similar to Plaintiffs' First Complaint in that both fail to "include factual allegations sufficient to support the reasonable inference that Defendants acted with the purpose or conscious object of causing artificial silver futures prices to exist or an artificial price trend on the COMEX market." (Op. at 23.)

4.  Price Movements on June 26, 2007 and August 14-15, 2008

Plaintiffs next argue that they have addressed the pleading deficiencies that the Court identified by including in the Proposed Amended Complaint allegations that "price movement[s] on June 26, 2007 and August 14-15, 2008 were contrary to and inconsistent with the fundamentals, the news flow, usual market activity, and a competitive market based on legitimate supply and demand factors." (Pls. Mem. at 6 (citing Am. Compl. ¶¶ 4(d), 60, 64, 66, 111, 114, 115).) These new allegations rely on regression analyses and other statistical work comparing the market price for COMEX silver to the price for COMEX gold on single days, and Plaintiffs contend that these statistics show that JPMorgan caused artificial prices to exist in the COMEX silver futures market on the dates in question.⁴ (Am. Compl. ¶¶ 60, 87, 111; see also Reply Mem. at 5-8.)

---

³The report is available at http://files.shareholder.com/downloads/ONE/2272971153x0x628656/4cb574a0-0bf5-4728-9582-625e4519b5ab/Task_Force_Report.pdf.

⁴To a lesser extent, the Proposed Amended Complaint also discusses comparisons between the daily market price of silver and the daily market prices of platinum and palladium. (Am. Compl. ¶¶ 60(a)-(h), 87(f)-(j), 111(f)-(g); but see Pls. Mem. at 7 (disparaging utility of price comparisons between these three metals); Reply Mem. at 5-8 (same).) In so doing, Plaintiffs claim that the alleged fluctuations between silver, platinum, and palladium on specific days also show price artificiality. (Pls. Mem. at 7.) But given how susceptible prices on a daily basis (vs.

7

Plaintiffs' allegations fail, however, to demonstrate plausibly that JPMorgan was the proximate cause of the fluctuations between COMEX silver prices and COMEX gold prices on these specific days.  Plaintiffs' statistical analyses reflect generalized fluctuations in the metals markets and Plaintiffs do not include allegations that are sufficiently factual—and not conclusory—to connect or link these fluctuations to actions undertaken by JPMorgan. (Cf. Am. Compl. ¶¶ 60, 61, 87, 111); see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (explaining that a court need not accept as true allegations made in a complaint that are "supported by mere conclusory statements").  Moreover, Plaintiffs cannot show price artificiality by relying on daily or short term price comparisons to gold alone. (See Op. at 24-25.)  As this Court discussed at length in its Opinion, such comparisons are unreliable. (Id.)

In addition, as was also discussed in the Opinion, the CFTC looks not to price comparisons between gold and silver when assessing manipulation allegations, but rather to the price of physical silver on the London Bullion Market. (Op. at 24-25 (discussing CFTC market reports from 2004 and 2008).)  Indeed the London Bullion Market price is "widely regarded as the benchmark value of silver in the marketplace." (Id.)  Plaintiffs, themselves, allege that "spot and silver futures prices" on the London Bullion Market moved by magnitudes similar to those on the COMEX market on the dates in question, which directly undercuts Plaintiffs' claims about artificial prices on COMEX. (Am. Compl. ¶¶ 60(a), 111(a)-(b); see also Op. at 24-25 (discussing average basis difference between COMEX and London Bullion Market prices).)

---

an averaged longer term basis) are to multiple factors having nothing to do with the actions of JPMorgan, (see, e.g., Opp'n Mem. at 13-14), these allegations are insufficient to plausibly show price artificiality.  Rather, like Plaintiffs' First Complaint, the Proposed Amended Complaint contains factual allegations that could be "consistent with" price artificiality, but it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  (Op. at 34 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).)

>    5. Price fluctuations after the March 25, 2010 CFTC Meeting on Manipulation & the August 27, 2010 Announcement of a Potential JPMorgan Trading Desk Closure

Finally, Plaintiffs argue that they should be granted leave to file their Proposed Amended Complaint because it plausibly alleges that COMEX silver futures prices (1) outperformed gold prices between March 25, 2010, when the CFTC held its hearing on manipulation of the silver markets, and three weeks later, on April 15, 2010, (Pls. Mem. at 8 (citing ¶ 87(b)); and (2) also outperformed COMEX gold prices "after JPMorgan announced that it was closing its London silver office." (Pls. Mem. at 7-8 (citing Am. Compl. ¶ 87(c)-(d)).) However, for the same reasons identified by this Court in its Opinion, these allegations are insufficient to show that JPMorgan took any action which caused price artificiality in the COMEX silver futures market. (Op. at 26-27.) Furthermore, the statistical charts relied on by Plaintiffs showing market price trends over the two week period following the March 25, 2010 CFTC conference are inconclusive and contradictory as to price trends on the COMEX market. (Pls. Mem. at 7 (citing Am. Compl. ¶¶ 14(a), 87).) Similarly inconclusive and contradictory are Plaintiffs' factual allegations and charts pertaining to market price trends just after the news that JPMorgan had "reportedly closed its proprietary trading desk for commodities, as an early reaction to the U.S. Dodd-Frank Wall Street Reform and Consumer Protection Act," (see Davidoff Decl. Ex. G (FO Week, "JP Morgan Closes Commodities Prop Desk," Aug. 27, 2010) at 2).

Thus, as the foregoing discussion sets forth, none of the allegations added by Plaintiffs in the Proposed Amended Complaint cure the pleading deficiencies that led to the dismissal of Plaintiffs' First Complaint for failure to state a claim. The Proposed Amended Complaint still fails to state a claim pleading facts constituting a violation of the Commodity Exchange Act and thus the Proposed Amended Complaint would not be able to survive a Rule 12(b)(6) motion to dismiss on these claims. Accordingly, the proposed amendments would be futile and justice

does not require granting Plaintiffs leave to file the Proposed Amended Complaint. See Foman, 371 U.S. at 182 (A motion to amend should be denied if there is an "apparent or declared reason—such as . . . futility of amendment."); Kaster v. Modification Sys., Inc., 731 F.2d 1014, 1018 (2d Cir. 1984) ("That [an] amendment[] would not serve any purpose is a valid ground to deny a motion for leave to amend.").

> **B. Plaintiffs have failed to show good cause as to why they should be granted leave to file the Proposed Amended Complaint since the proposed allegations are insufficient to establish a claim under the Sherman Antitrust Act.**

In Count Four of the Proposed Amended Complaint, Plaintiffs assert for the first time that JPMorgan is liable under Section 2 of the Sherman Antitrust Act.[5] (Am. Compl. ¶¶ 211-214.) To state a Section 2 monopolization claim, plaintiffs must allege facts showing "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business, acumen, or historic accident." United States v. Grinell Corp., 384 U.S. 563, 570-71 (1966). "Monopoly power" has been held to exist where a party "can control prices or exclude competition." PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 107-08 (2d Cir. 2002). The "willful acquisition or maintenance of power" has been construed as "improper conduct that has or is likely to have the effect of controlling prices or excluding competition." Id. at 108.

Here, Plaintiffs have not alleged any factual allegations or authority to support their conclusion that JPMorgan either had monopoly power in the COMEX market or engaged in the

---

[5] Plaintiffs do not add any allegations in their Proposed Amended Complaint that might cause the Court to reconsider its previous decision to dismiss Plaintiffs' Section 1 claims, and thus the Court sees no grounds to do so. As was made clear in the Opinion, Plaintiffs failed to state a Section 1 claim because they relied on conclusory statements to show the existence of a conspiracy by JPMorgan to restrain trade or manipulate the COMEX silver futures markets. (Op. at 36); see also Harris, 572 F.3d at 72 ("[A]lthough a court must accept as true all of the allegations contained in a complaint, that 'tenet' is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks and citations omitted).

willful acquisition of such monopoly power.[6]  Indeed the factual allegations upon which Plaintiffs rely, (see Pls. Mem. at 10 (citing Am. Compl. ¶¶ 4-7, 52, 56-67, 211-19),  simply do not explain how JPMorgan might have acted to control prices or to exclude other silver futures traders in the COMEX silver market, (see supra at IV.A) (discussing insufficiency of Plaintiffs' pleadings).  Nor do Plaintiffs' factual allegations make it clear that the apparently legitimate transactions which JPMorgan is alleged to have made on the COMEX silver futures market were made for illegitimate or anticompetitive reasons, i.e., an abuse of monopoly power.

Plaintiffs also have failed to explain why they should be entitled to add this Section 2 Claim at this late stage in the litigation, and this Court therefore declines to grant them leave to do so now.  See In re Merrill Lynch & Co., Inc., 273 F. Supp. 2d 351, 391 (S.D.N.Y. 2003) (leave to amend is properly denied when, inter alia, Plaintiffs wait until dismissal of their claims before requesting leave to amend), aff'd, Lentell v. Merrill Lynch & Co., 396 F.3d 161 (2d Cir.2005); see also Berman v. Parco, 986 F. Supp. 195, 217 (S.D.N.Y. 1997) ("[T]he Court may deny a motion to amend when the movant knew or should have known of the facts upon which the amendment is based when the original pleading was filed, particularly when the movant offers no excuse for the delay.") (internal quotation marks omitted).  For as other courts in this district have held, leave to amend a complaint should generally be denied when a motion to amend is "filed solely in an attempt to prevent the Court from granting a motion to dismiss or for

---

[6] In support of their Sherman Antitrust Act claim, Plaintiffs allege that JPMorgan frequently held 24-32% of the open interest in all COMEX silver futures short contracts then trading" and that "JPMorgan also sometimes held 30-40% of the short open interest in the important COMEX silver futures contracts expiring in the 'front' months." (Am. Compl. ¶ 3.)  These allegations do not make clear what relative stake in the silver futures market JPMorgan held as compared to other silver futures traders and, even if they did, the Second Circuit has long stated, that this percentage of a market does not necessarily constitute a monopoly.  See United States v. Aluminum Co. of Am., 148 F.2d 416, 424 (2d Cir. 1945) ("[Ninety percent of a market] is enough to constitute a monopoly; it is doubtful whether sixty . . . percent would be enough; and certainly thirty-three percent is not.").

summary judgment, particularly when the new claim could have been raised earlier." Berman, 986 F. Supp. at 217; see also Goss v. Revlon, 548 F.2d 405, 407 (2d Cir. 1976).

### C. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to File an Amended Consolidated Class Action Complaint is DENIED and the action is dismissed.

SO ORDERED.

Dated: New York, New York
March 15, 2013

_____s/s_____
Robert P. Patterson
U.S.D.J.